ACCEPTED
03-14-00509-CV
3878566
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/23/2015 1:03:50 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00509-CV

# IN THE COURT OF APPEALS
# FOR THE THIRD JUDICIAL DISTRICT
# AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/23/2015 1:03:50 PM
JEFFREY D. KYLE
Clerk

_____

## THE UNIVERSITY OF TEXAS AT AUSTIN
*Appellant*

v.

## DIJAIRA B. SMITH
*Appellee*

_____

On Interlocutory Appeal from Cause No. D-1-GN-13-004318 in the 2OO[th] District Court of Travis County, Texas, Honorable Judge Amy Clark Meachum, Presiding

_____

## APPELLEE'S POST-SUBMISSION BRIEF

_____

JOHN JUDGE
State Bar No. 11044500
JUDGE, KOSTURA & PUTMAN, P.C.
The Commissioners House at
Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Telephone: 512/328-9099
Facsimile: 512/328-4132
Email: jjudge@jkplaw.com

*Counsel for Appellee Dijaira B. Smith*

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Appellee Dijaira B. Smith certifies that the following is a list of all parties and their counsel to the trial court's judgment or order appealed from as required by Texas Rule of Appellate Procedure 38.1(a):

| Name of Party | Name of Counsel |
|---|---|
| **1. Plaintiff/Appellee** <br> Dijaira B. Smith <br> ("Di Smith") | John Judge <br> State Bar No. 11044500 <br> JUDGE, KOSTURA & PUTMAN, P.C. <br> The Commissioners House at Heritage Square <br> 2901 Bee Cave Road, Box L <br> Austin, Texas 78746 <br> Telephone: 512/328-9099 <br> Facsimile: 512/328-4132 <br> Email: jjudge@jkplaw.com |
| **2. Defendant/Appellant** <br> The University of Texas at Austin <br> ("UT-Austin") | Erika Laremont <br> State Bar No. 24013003 <br> Assistant Attorney General <br> Office of the Attorney General <br> General Litigation Division <br> P.O. Box 12548 <br> Austin, Texas 78711 <br> Telephone: 512/463-2120 <br> Facsimile: 512/320-0667 <br> Email: <br> erika.laremont@texasattorneygeneral.gov |

_____

John Judge
State Bar No. 11044500



The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Telephone:   512/328-9099
Facsimile:    512/328-4132
jjudge@jkplaw.com

***Counsel for Appellee Dijaira B. Smith***

## APPELLEE'S POST-SUBMISSION BRIEF

To the Honorable Court:  Having obtained leave, Appellee files her post-submission brief.

### A. Introduction

Appellee's citation to this Court's opinion in *Resendez v. TCEQ*, 391 S.W.3d 312, 322 (Tex. App. – Austin 2012), and the Supreme Court's more recent reversal of that ruling, *TCEQ v Resendez*, ___ S.W.3d ___ (Tex. No. 13-0094, Nov. 21, 2014), does not mean that the trial court's denial of Defendant's plea to the jurisdiction must be reversed in this case.  To the contrary, the Supreme Court's omission of certain facts from its *per curiam* opinion in *TCEQ*; facts that Appellee argued were favorably parallel to material facts her facts in her case; supports a conclusion that the Supreme Court's opinion in *TCEQ* is materially distinguished.  More importantly, this case contains significant jurisdictional facts that were not at all present in *TCEQ*; namely that the University of Texas, Office of Internal Audit (OIA) is specifically mandated to investigate violations of criminal law.  Finally, a companion case handed down the same day as *TCEQ* demonstrates that the Supreme Court is not a blind denier of all waivers of sovereign or governmental immunity, as some government lawyers are wont to urge.  *Dalmuth v. Trinity Valley Community College*, ___ S.W.3d ___ (Tex. 13-0815, Nov. 21, 2014).

Accordingly, the Supreme Court's surprise reversal of this Court's ruling in *Resendez* does not mandate reversal of the trial court's denial of Defendant's plea to the jurisdiction in this case.

## B. Investigative Authority

The statute provides a disjunctive definition of appropriate law enforcement authority (ALEA) with four distinctive elements; that the reporter believed in good faith the report recipient was a part of an entity authorized to:

1. Regulate under the law reported to have been violated; or

2. Enforce the law reported to have been violated; or

3. Investigate violations of criminal law; or

4. Prosecute violations of criminal law.

GOVT. CODE, §554.002 (b)

In this case the Office of Internal Audit is clearly authorized to investigate violations of criminal law involving third parties, such as contractors and their employees. This authority is spelled out in the Handbook of Operating Procedures. It extends to all individuals having a business relationship with the university ***outside of traditional employment***; paid or unpaid; including, but not limited to,

affiliations associated with research, visiting scholars, employees of contractors, and volunteers. [1]

Because the OIA is authorized to investigate violations of criminal law, it is, objectively and indisputably, ALEA. The power to investigate violations of criminal law, standing alone, is sufficient to make an entity ALEA. *OAG v. Weatherspoon*, ___ S.W.3d ___, 2014 WL 2708759 (Tex. App. – Dallas No. 05–13–00632–CV June 16, 2014). Plaintiff's subjective belief, based primarily on the auditors' assurance that they were ALEA, was in fact and in law, objectively reasonable.

## C. Omitted Facts

In *Resendez*, this court put some weight on a supervisor's taunt to the whistleblowing reporter that if she believed that violations of law were occurring, she should "report it to management." *Resendez*, 391 S.W.3d at 327. The *TCEQ* court did not find the taunting to be of significance. It is not mentioned in the *per curiam* opinion, and is therefore immaterial to a proper analysis of the ALEA definition in that case.

Now, the distinction between a supervisory taunt and an auditor's reassurance becomes critically significant. In this case the auditors assured Di

---

[1] CR 323-26, Handbook of Operating Procedures, 3-1021, Suspected Dishonest or Fraudulent Activities

3

Smith that she was reporting to the proper authorities and that she was protected under the Whistleblower Protection Act.[2] She was encouraged to, and did in fact report to people outside her immediate employer's circle of influence; people who had authority investigate violations of criminal law; to right wrongs; to do justice.

In contrast, the supervisor's taunt in *Resendez* had the opposite effect. It served to keep the institutional wrongdoing in house and under the rug. Confining the reports of TCEQ crimes to TCEQ managers kept the damning information away from authorities that could deal with the violations in the terms of the law. Reporting TCEQ crime to TCEQ management would not protect the fisc in the same way that reporting UIL crimes to internal auditors authorized to investigate violations of criminal law would.

For the same reason that the supervisor's taunt of Resendez is immaterial to proper ALEA analysis in *TCEQ*, the auditors' legally correct assurance that Smith could safely spill the beans on her bosses is highly significant. It is a material fact that mandates a finding and conclusion that sovereign immunity has been waived in this case.

D. *Okoli* **and** *Dalmuth*

---

[2] CR, 153, Id. p. 44, l. 6-17; CR, 179-180, Id. p. 70, l. 19-p. 71, l. 17

Read together with *TDHS v. Okoli* _____, ___ S.W.3d ___ (Tex. No. 10-0567, 2014) and *Dalmuth v. Trinity Valley Community College*, ___ S.W.3d ___ (Tex. 13-0815, Nov. 21, 2014), *TCEQ* demonstrates that Di Smith's reports to UT's internal auditors were made to ALEA, and are protected under the Whistleblower Protection Act, GOVT. CODE. 554.001, et seq. Following the *Needham* to *Gentilello* line of cases, the *Okoli* and *TCEQ* opinions reaffirm that reports to internal authorities with powers to ensure agency compliance do not constitute reports to ALEA.

These cases, however, do nothing to detract from a whistleblower's legal protection for reporting to an entity, whether internal or external, that has is reasonably believed to possess investigative authority in criminal matters. The objective reasonableness of Smith's belief in the appropriateness of her report to the Office of Internal Audit is proven through the free-standing criminal investigative authority is bestowed by university policy, HOP 3-1021; established under the Regents' Rules, Rule 20201; which was adopted pursuant to statute, Texas EDUC. CODE, §§ 65.11 et seq., and 51.352.

In *Dalmuth* the court observed that LOCAL GOVT. CODE, §§ 271.151(2) and 271.152, waive a local governmental entity's immunity from suit for breach of a services contract. The Court tersely dealt with each of the defendant's arguments that contrived to escape the clear and direct legislative waiver of immunity.

5

First, "services" clearly includes what an employee provides his employer by his efforts, and the statute waives immunity for claims under contracts for services. Second, although the specific LOCAL GOVT. CODE sub-chapter involved is entitled, "Acquisition, Sale, or Lease of Property, … [t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." Thus, the ordinarily broad and general usage of the term 'services' includes any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed, citing *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962). Third, although the firefighters' of earlier precedent were civil servants, treated differently from other employees in some contexts, the law's occasionally special treatment of civil service employees says nothing about whether they should be treated differently under the Act. Nothing in the Act itself indicates that its waiver of immunity is limited to suits by civil servants.

*Dalmuth* proves that the Supreme Court can find a legislative waiver of immunity when the legislature provides one. It simply will not lightly imply one where it is not directly stated, or necessarily implied by clear legislative writ, and supported in the facts of the case at issue. The lower courts' dismissal of the case pursuant to the employer's plea to the jurisdiction was reversed, and without hearing oral argument, remanded to the trial court.

Likewise, in this case, the legislature has plainly stated a waiver of sovereign immunity for public employees who can state a claim under Chapter 554 of the GOVERNMENT CODE.

> "A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is *waived and abolished* to the extent of liability for the relief allowed under this chapter for a violation of this chapter." (emphasis added)

GOVT. CODE, §554.0035

The trial court has properly found the OAI to be ALEA. It has the free standing authority, and a mandate to investigate violations of criminal law involving financial impropriety.

## E. Conclusion

The trial court's denial of Defendant's plea to the jurisdiction should be upheld.

Respectfully submitted,

_____

John Judge
State Bar No. 11044500



JUDGE, KOSTURA & PUTMAN, P.C.
ATTORNEYS AT LAW

The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Telephone: 512/328-9099
Facsimile: 512/328-4132
jjudge@jkplaw.com

***Counsel for Appellee Dijaira B. Smith***

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December, 2014 a true and correct copy of the above and foregoing *Appellee's Post-Submission Brief* was served on all counsel of record via electronic filing notice as follows:

Erika Laremont
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548

John Judge
Counsel for Appellee Dijaira B. Smith

## CERTIFICATE OF COMPLIANCE

This Appellee's Post-Submission Brief complies with the length limitations of Texas Rule of Appellate Procedure 9.4(i)(2) because it contains 1,372 words, excluding the parts exempted by Rule 9.4(i)(l).

_____
John Judge
Counsel for Appellee Dijaira B. Smith